*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

MATTHEW LEWINSKI,

      Defendant-Appellee.

FOR PUBLICATION
October 28, 2024
12:30 PM

No. 365350
Macomb Circuit Court
LC No. 2022-001230-FC

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

RIORDAN, P.J. (*concurring*).

I concur with the result reached by the majority that the trial court erred by suppressing the incriminating statements at issue. I write separately, however, because I would apply a different analysis for reaching that result.

As the majority recognizes, the fundamental issue here is whether defendant was subject to "custodial interrogation" when he was a hospitalized patient and questioned by the police.

In *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." However, "*Miranda* warnings are not required unless the accused is subject to custodial interrogation." *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 305 (quotation marks and citation omitted).

"In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012) (cleaned up). Ordinarily, resolving this question requires considering whether "an individual's freedom of movement was curtailed." See *Elliott*, 494 Mich at 307 (quotation marks and citation omitted). In other cases, however, an individual's "freedom of movement [may be] restricted by a factor independent of police conduct."

-1-

*Florida v Bostick*, 501 US 429, 436; 111 S Ct 2382; 115 L Ed 2d 389 (1991). In *Bostick*, for example, the defendant's freedom of movement was restricted by the fact that he was "a passenger on a bus," not by the fact that the police attempted to communicate with him. See *id*. Consequently, "when a person has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Brendlin v California*, 551 US 249, 255; 127 S Ct 2400; 168 L Ed 2d 132 (2007) (quotation marks and citations omitted).

So too here. While the majority correctly observes that defendant had his freedom of movement restrained because "[he] was actively being treated in the hospital" and "he was lying in a hospital bed and hooked up to IV and oxygen tubes," these facts are not significant for determining whether he was subject to police-imposed restraint. In other words, defendant had his freedom of movement restrained because of background circumstances, not police-imposed circumstances. As explained by the United States Court of Appeals for the Fourth Circuit, when a hospitalized patient is questioned by the police, the attendant restraint on the freedom of movement by virtue of the hospitalization is not police-imposed restraint for the purposes of determining "custodial interrogation":

> Analysis of whether Jamison was in custody when he made the statements describing the shooting depends on whether a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter. In dissecting the perceptions of such a reasonable person, however, we must be careful to separate the restrictions on his freedom arising from police interrogation and those incident to his background circumstances. That is, to the extent Jamison felt constrained by his injuries, the medical exigencies they created (e.g., the donning of a hospital gown and the insertion of an I.V. line), or the routine police investigation they initiated, such limitations on his freedom should not factor into our reasonable-person analysis. It is this careful differentiation between police-imposed restraint and circumstantial restraint that leads us to conclude that Jamison was not in custody when he described the shooting during his hospital interview.

\* \* \*

> At bottom, Jamison was certainly inconvenienced by the circumstances of his hospitalization. Trading one's street clothes for a gown, sacrificing one's privacy as countless nurses, nursing assistants, and physicians perform examinations, and suffering the insertion of an I.V. line into one's arm are all intrusions borne by those in need of urgent medical care. These circumstances served to compound the primary restriction on Jamison's freedom to leave: twin wounds from a bullet entering near his groin and exiting his outer thigh. The fact of Jamison's injury, the trappings of his treatment, and the routine aspects of the investigation he initiated provided the most substantial restrictions of Jamison's freedom of movement, far outstripping whatever additional impingement on his freedom to leave was presented by the officers during the ongoing police investigation into his shooting. [*United States v Jamison*, 509 F3d 623, 629-633 (CA 4, 2007) (cleaned up).]

Other state courts are in accord. See *State v LaCouture*, 146 NM 649, 653; 213 P3d 799 (NM Ct App, 2009) ("Our appellate courts have never considered whether the interrogation of a hospital patient constitutes a custodial interrogation. . . . Based on the out-of-state authority the determination that a defendant was subjected to custodial interrogation most often turns on the distinction between circumstantial restraints and direct police-imposed limitations on a defendant's freedom.").

As applied to the case before us, defendant's freedom of movement was restrained because of background circumstances—the fact of hospitalization—not police-imposed restraint.[1] Moreover, the video recording of the police conversation with defendant does not reveal any overbearing, aggressive, or unusual police conduct during that conversation. Rather, the police calmly and respectfully questioned defendant about the underlying apparent crime in a manner that was no different than a typical police interaction with a member of the general public. Defendant therefore was not subject to "custodial interrogation," as a reasonable person in his position would have felt free to terminate the police encounter. See *Brendlin*, 551 US at 255. As a result, *Miranda* does not require suppression of the incriminating statements at issue.[2]

Accordingly, for the reasons explained herein, I agree with the result reached by the majority reversing the trial court's suppression of the incriminating statements made by defendant to the police in the hospital.

/s/ Michael J. Riordan

---

[1] There is nothing to suggest that defendant was detained in his hospital room by the presence of one or more police officers guarding the door during his hospitalization. Further, testimony below indicates that defendant originally was admitted to the hospital after "EMS" was contacted because he was acting erratically in public, and according to a treating doctor, "initial presentation there was concern this might be, you know, possibly related to a drug overdose, possibility of central nervous system infection, and things like that." Consequently, the circumstances surrounding defendant's hospitalization were not caused by the police and, in my view, cannot reasonably be attributed to the police.

[2] The majority correctly observes in footnote one that our Supreme Court remanded this case to this Court for reconsideration as on leave granted. See *People v Lewinski*, ___ Mich ___ (2024) (Docket No. 165606). However, before remanding this case, our Supreme Court originally held this case in abeyance for *People v Ghunaim*, Docket No. 165109. In *Ghunaim*, our Supreme Court ordered oral argument on the application, directing the parties to address "whether the defendant was subjected to a 'custodial interrogation' without being advised of his rights under [*Miranda*] when he was a hospitalized patient." *People v Ghunaim*, 511 Mich 978 (2023). Ultimately, our Supreme Court denied leave to appeal in *Ghunaim*, *People v Ghunaim*, 513 Mich 1036 (2024), leaving unaffected this Court's unpublished opinion affirming the trial court's denial of the defendant's "motion to suppress statements he made to police while in the hospital," *People v Ghunaim*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2022 (Docket No. 359167), at 1.